UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ELVIS PERALTA,

                    Plaintiff,

      -against-

CITY OF NEW YORK, individually and in their official
capacities as New York City police officers, DANIEL
CASTILLO, PETER VALENTIN, ROBERT
GALLITELLI, JOSEPH RIVERA and BRIAN GREEN,

                    Defendants.
-------------------------------------------------------------------X

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Docket No. 19-cv-7565 (JKG)

        Plaintiff, ELVIS PERALTA, by and through the undersigned attorneys, Sim & DePaola, LLP, for his complaint against the Defendants, CITY OF NEW YORK, individually and in their official capacities as New York City police officers, DANIEL CASTILLO, PETER VALENTIN, ROBERT GALLITELLI, JOSEPH RIVERA and BRIAN GREEN, alleges and states as follows:

**PRELIMINARY STATEMENT**

1.     This is a civil rights action, in which Plaintiff seeks relief, via 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988, for the deprivations of his civil rights in violation of the First, Fourth, Sixth and Fourteenth Amendments to the Constitution of the United States, as well as the laws and constitution of the State of New York.

2.     The following claims arise from a July 13, 2017 incident, in which defendants, acting under color of state law, unlawfully arrested and detained Mr. Peralta inside of 1141 Tiffany Street, Apartment 5B, County of Bronx, City and State of New York. Mr. Peralta was subsequently charged with Criminal Possession of a Controlled Substance in the Seventh Degree.

3.      As a result, Mr. Peralta was deprived of his liberty and suffered physical, emotional and psychological injuries. Mr. Peralta was wrongfully detained for approximately eight (8) hours. On November 2, 2017, Mr. Peralta accepted an Adjournment in Contemplation of Dismissal, which resulted in the dismissal and sealing of all criminal charges on May 1, 2018.

4.      Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

5.      This action arises under the First, Fourth, Sixth and Fourteenth Amendments to the United States Constitution, under 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988, as well as the laws and constitution of the State of New York.

6.      The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of supplemental jurisdiction.

## VENUE

7.      Venue is laid within the Southern District of New York, because Defendant, City of New York, is located within and a substantial part of the events giving rise to the claims occurred within the boundaries of the Southern District. 28 U.S.C. § 1391 (b) and (c).

## PARTIES

8.      Plaintiff, Elvis Peralta ("Mr. Peralta"), is a thirty-four-year-old, Hispanic male, who resides in Bronx County, City and State of New York.

9.      Defendant, City of New York ("City"), is a municipal corporation organized under the laws of the State of New York.

10.     At all times relevant hereto, Defendant City, acting through the New York City Police Department ( "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel, including police officers, detectives, and supervisory officers as well as the individually named Defendants herein.

11.     In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

12.     Defendant, Daniel Castillo ("Castillo"), was, at all times here relevant, a police officer or detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Castillo was, at the times relevant herein, a police officer or detective, under Shield No. 5740 and Tax Reg. No. 946837, in the BXGS, located at One Police Plaza, 11th Floor, New York, New York 10038. Defendant Castillo is being sued in his individual and official capacities.

13.     Defendant, Peter Valentin ("Valentin"), was, at all times here relevant, a police officer or detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Valentin was, at the times relevant herein, a police officer or detective, under Tax Reg. No. 929577, assigned to the Manhattan Court Section, located at One Police Plaza, 11th Floor, New York, New York 10038. Defendant Valentin is being sued in his individual and official capacities.

14.     Defendant, Robert Gallitelli ("Gallitelli"), was, at all times here relevant, a police officer or police captain employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Gallitelli was, at the times relevant

herein, a police officer or captain, Tax Reg. No. 928343, in the BXGS, located at One Police Plaza, Room 1312, New York, New York 10038. Defendant Gallitelli is being sued in his individual and official capacities.

15.     Defendant, Daniel Rivera ("Rivera"), was, at all times here relevant, a police officer or police sergeant employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Rivera was, at the times relevant herein, a police officer or sergeant, under Tax Reg. No. 943738, in the BXGS, located at One Police Plaza, Room 1312, New York, New York 10038. Defendant Rivera is being sued in his individual and official capacities.

16.     Defendant, Brian Green ("Green"), was, at all times here relevant, a police officer or detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Green was, at the times relevant herein, a police officer or detective, under Tax Reg. No. 932740, in the BXGS, located at One Police Plaza, Room 1312, New York, New York 10038. Defendant Green is being sued in his individual and official capacities.

17.     At all relevant times herein, Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

18.     Plaintiff has complied with all conditions precedent prior to commencing the instant action.

## **FACTUAL CHARGES**

19.     On, or about, July 13, 2017, at approximately 6:00 a.m., Mr. Peralta was inside of 1141 Tiffany Street, Apartment 5B, County of Bronx, City and State of New York.

20.     At said date, time and location, Mr. Peralta was lawfully within said location, as an invited guest of his significant other, Ms. Gabriela Pesantes (Ms. Pesantes), who was the sole resident leaseholder of said premises.

21.     At approximately 6:00 a.m., Mr. Peralta was awoken by Defendants, including Castillo, Gallitelli, Rivera and Green, who broke through the entry door of Ms. Pesantes' residence, without a lawfully obtained search warrant, probable cause or other legal reason to enter said private residence.

22.     On said date, time and location, defendants, including Castillo, Gallitelli, Rivera and Green, entered said apartment, pursuant to a search warrant that was obtained via the use of fraud, perjury, the suppression of evidence, or the commission of acts that grossly deviated from proper police procedure, namely the submission of false observations or knowingly inaccurate, incomplete, misleading or incorrect information by defendants, including Castillo, to the both District Attorney's Office and the judicial officer, Hon. Curtis Farber, who unwittingly issued said warrant on the basis of fabricated intelligence.

23.     Defendants, including Castillo, Gallitelli, Rivera and Green, did not provide full and truthful facts to the District Attorney's Office or Hon. Curtis Farber, regarding the basis for the search warrant application to the subject residence.

24.     Defendants, including Castillo, Gallitelli, Rivera and Green, falsely informed the District Attorney's Office and Hon. Curtis Farber that a confidential informant had provided defendants with credible information to justify the issuance of a search warrant for 1141 Tiffany Street, Bronx, New York, namely that plaintiff was illegally selling heroin from said location.

25.     Plaintiff asserts that said information was false, because no heroin or any other illicit substance was sold from said location during the time alleged.

26.     Plaintiff further asserts that defendants, including Castillo, Gallitelli, Rivera and Green, were fully aware that said information provided to District Attorney's Office and Hon. Curtis Farber, because plaintiff discovered a hidden quantity of heroin that was planted by defendants during the execution of a previous search warrant at said location, which plaintiff asserts was planted to ensure that plaintiff was arrested, prosecuted and convicted an additional time in the future.

27.     Defendants, including Castillo, Gallitelli, Rivera and Green, were either never informed that plaintiff was selling heroin from said location by a confidential informant, or defendants conspired with said confidential informant to provide knowingly false information to justify the issuance of a search warrant.

28.     Defendants, including Castillo, Gallitelli, Rivera and Green, entered said location with their guns drawn, which caused Mr. Peralta to fear for his safety and general well-being.

29.     Defendants, including Castillo, Gallitelli, Rivera and Green, violently contorted plaintiff's arms behind his back and then proceeded to affix metal handcuffs to his wrists in an excessively tight fashion, causing plaintiff to sustain substantial pain, swelling and bruising to his wrists.

30.     Defendants, including Castillo, Gallitelli, Rivera and Green, committed multiple assault and batteries to Mr. Peralta, including but not limited to, applying the handcuffs in an excessively tight fashion, as well as violently grabbing, pushing, shoving, and slamming Mr. Peralta to the floor, all of which caused plaintiff to sustain substantial physical pain and injuries.

31.     Mr. Peralta had not committed any crimes or violations of the law, which would allow the defendants to search, stop, detain or arrest plaintiff.

32.     Defendants, including Castillo, Gallitelli, Rivera and Green, never possessed a valid arrest warrant authorizing the arrest of Mr. Peralta.

33.     Defendants, including Castillo, Gallitelli, Rivera and Green, never possessed probable cause to arrest Mr. Peralta, as he did not commit any arrestable offenses, including Criminal Possession of a Controlled Substance, which was charged for the alleged recovery of two (2) pills of oxycodone.

34.     Defendants, including Castillo, Gallitelli, Rivera and Green, illegally searched Mr. Peralta at the location of his arrest and at the precinct.

35.     Said searches yielded nothing of probative value related to his unlawful arrest and detention, such as contraband, or evidence of contraband, of any kind.

36.     Defendants, including Castillo, Gallitelli, Rivera and Green, illegally searched said location, allegedly leading to the recovery of two (2) oxycodone pills from inside of a drawer and nothing more.

37.     Mr. Peralta was not in actual, constructive or statutory possession of any contraband, including the alleged oxycodone pills allegedly recovered from within a drawer inside said apartment residence.

38.     Defendants, including Castillo, Gallitelli, Rivera and Green, never took the time to verify or perform even a cursory investigation, as to whether the alleged oxycodone pills in the apartment were obtained legally, via a valid prescription, despite being repeatedly informed that conclusive documentary evidence in support of such an exculpatory finding was readily available and accessible.

39.     Mr. Peralta further asserts that if defendants, including Castillo, Gallitelli, Rivera and Green, did recover two (2) oxycodone pills from inside of a drawer within the apartment

residence, said pills were lawfully procured by the legal resident of the apartment, Ms. Gabriela Pesantes, via a valid medical prescription.

40.     As a result of defendants,' including Castillo's, Gallitelli's, Rivera's and Green's, knowingly and intentionally false statements and allegations, Mr. Peralta was falsely arrested under arrest number B17635545.

41.     Defendant Castillo was Mr. Peralta's arresting officer, who swore or affirmed to the truth of the allegations within the criminal court complaint against Mr. Peralta, while knowing said allegations to be complete fabrications and falsehoods.

42.     Defendants, including Castillo, Gallitelli, Rivera and Green, unlawfully arrested Plaintiff, falsely claiming he was in criminal possession of a controlled substance, despite being fully aware that the alleged oxycodone pills were clearly not in plaintiff's actual, constructive or statutory possession.

43.     Defendants, including Castillo, Gallitelli, Rivera and Green, were fully aware that no contraband was found in Mr. Peralta's possession, but knowingly and intentionally chose to state otherwise to justify and excuse an otherwise invalid arrest and flagrant waste of NYPD resources in the execution of an otherwise fruitless search warrant.

44.     Plaintiff did not commit any crimes or violations of the law, including the criminal possession of a controlled substance, namely oxycodone.

45.     After being held in the precinct for approximately eight (8) hours, Mr. Peralta was released upon being issued a Desk Appearance Ticket.

46.     Defendants, including Castillo, Gallitelli, Rivera and Green, intentionally provided said false information to the Bronx County District Attorney's Office, so that a criminal prosecution

would be initiated against Mr. Peralta, namely that two (2) oxycodone pills were in Mr. Peralta's possession.

47.     At no point did the Defendants, including Castillo, Gallitelli, Rivera and Green, ever observe Mr. Peralta commit any crime or offense.

48.     At no point were the defendants, including Castillo, Gallitelli, Rivera and Green, ever told by any witnesses that Mr. Peralta committed any crime or violation of the law.

49.     Defendants, including Castillo, Gallitelli, Rivera and Green, had no probable cause or reasonable suspicion to arrest, detain or stop Mr. Peralta, as he had clearly committed no crimes or violations of the law.

50.     Defendants, including Castillo, Gallitelli, Rivera and Green, acting with malice, conveyed the aforementioned false, misleading and incomplete information to prosecutors in order to have Plaintiff prosecuted for Criminal Possession of a Controlled Substance in the Seventh Degree.

51.     Defendants, including Castillo, Gallitelli, Rivera and Green, intentionally, knowingly and falsely made said allegations to conceal their otherwise illegal, tortious and sinister acts, namely the entering of a residence illegally without probable cause or a lawfully procured search warrant, the egregious waste of NYPD resources and manpower required to execute the search warrant, and the arrest of plaintiff in retaliation for commencing a prior lawsuit against the NYPD and defendant Valentin in Bronx County Supreme Court, under Index No. 306154-2014.

52.     Defendant Valentin directed, requested or otherwise improperly influenced defendants,' including Castillo's, Gallitelli's, Rivera's and Green's, decision to baselessly target and falsely arrest Mr. Peralta.

53.     Defendants, including Castillo, Gallitelli, Rivera and Green, suppressed evidence and engaged in conduct undertaken in bad faith.

54.     Mr. Peralta was forced to return to court to fight the false charge levied against him, until he accepted an Adjournment in Contemplation of Dismissal (ACD) on November 2, 2017.

55.     Pursuant to the ACD, the sole criminal charge levied against Mr. Peralta was dismissed and sealed on May 1, 2018.

56.     During all of the events described, the defendants, including Castillo, Gallitelli, Rivera, Green and Valentin, acted maliciously and with intent to injure Plaintiff.

57.     At all times relevant hereto, defendants, including Castillo, Gallitelli, Rivera and Green, were involved in the decision to arrest Plaintiff without probable cause or failed to intervene when they observed others arresting Plaintiff without probable cause.

58.     At all times relevant hereto, Defendants, including Castillo, Gallitelli, Rivera and Green, engaged in fraud, perjury, the suppression of evidence and other actions conducted in bad faith, or failed to intervene when defendants observed others doing so, all in furtherance of Plaintiff's criminal prosecution.

59.     Mr. Peralta asserts that Defendants, including Castillo, Gallitelli, Rivera, Valentin and Green,  illegally targeted, falsely arrested and caused the initiation of a criminal prosecution against Mr. Peralta in retaliation for Mr. Peralta's then pending lawsuit against the City of New York, the NYPD and defendant Valentin, to prevent Mr. Peralta from attending his scheduled court appearance for the day of his arrest and cause a bench warrant to be issued for his arrest, because of defendants' racial, ethnic, gender or age based discriminatory prejudices, as well as defendants' desire to meet an arrest quota and to benefit from increased overtime compensation.

60.     Mr. Peralta further asserts that defendants,' including Castillo's, Valentin's, Gallitelli's, Rivera's and Green's, retaliatory or discriminatory intent is substantiated by the facts that the subject search warrant was suspiciously executed the morning that plaintiff had a scheduled court appearance,  that only Mr. Peralta was arrested, despite undisputed facts that the alleged contraband was not discovered in plain view, that Mr. Peralta did not reside in the subject apartment residence, that there was no evidence indicating that he resided there, that Ms. Pesantes did reside there and did admit to residing to there, that Ms. Pesantes immediately informed defendants that the alleged controlled substance, the two (2) oxycodone pills, were legally prescribed to her, and that she could produce said prescription at the time of plaintiff's arrest.

61.     Defendants, including Castillo, Gallitelli, Rivera and Green, arrested Plaintiff, not because of any probable cause to believe Plaintiff had committed any crimes or violations of the law, but because Plaintiff is a young male of Hispanic descent or because he has filed a prior lawsuit against defendants' fellow Bronx NYPD officers, particularly defendant Valentin.

62.     Defendants, including Castillo, Gallitelli, Rivera and Green, discriminated against Plaintiff by arresting him solely due to defendants' consideration of Plaintiff's commencement of a prior lawsuit against the NYPD or because of plaintiff's status a young Hispanic male.

63.     Defendants, including Castillo, Valentin, Gallitelli, Rivera and Green, engaged in a conspiracy to deprive plaintiff of his rights by communicating with each other in person, as well as by use of their cellular phones, both verbally and through text.

64.     Defendants, including Castillo, Valentin, Gallitelli, Rivera and Green, perpetrated multiple overt acts in furtherance of their obviously discriminatory and retaliatory inclinations, namely the planting of a quantity of heroin during the execution of a prior search warrant, the

fabrication of a confidential informant or the information provided said confidential information, the submission of knowingly false facts to the District Attorney's Office and Hon. Curtis Farber to justify the issuance of search warrant, the execution of the subject search warrant based on said false information and the false arrest of plaintiff, despite the absence of any probably cause to do so.

65.     Defendants, including Castillo, Valentin, Gallitelli, Rivera and Green, possessed no valid reason to target Ms. Pesantes' residence for a search warrant or to arrest plaintiff, which gives rise to the strong inference that the unlawful acts committed by Defendants, including Castillo, Gallitelli, Rivera, Green and Valentin, against Plaintiff were discriminatorily or retaliatorily motivated and enacted upon for the aforementioned reasons.

66.     Defendants, including Castillo, Valentin, Gallitelli, Rivera and Green, subjected plaintiff to disparate treatment compared to other individuals similarly situated, such as Ms. Pesantes, because defendants did not arrest Ms. Pesantes, despite her being physically present and actually residing in the location, as well as her immediate admission and explanation for her legal possession of the alleged oxycodone pills.

67.     Accordingly, if there was probable cause to arrest either of the apartment occupants, Mr. Peralta and Ms. Pesantes, it existed solely for Ms. Pesantes.

68.     Mr. Peralta asserts that he was impermissibly treated differently than Ms. Pesantes, because Mr. Peralta had previously filed a lawsuit against NYPD officers, particularly officers and detectives who were assigned to Bronx County, and also because Mr. Peralta is a young male of Hispanic descent, while Ms. Pesantes has never filed a lawsuit against the NYPD and is not a Hispanic male.

69.     Defendants,' including Castillo's, Gallitelli's, Rivera's and Green's,  unlawful arrest and initiation of a criminal prosecution against plaintiff, at the direction or behest of defendant Valentin, adversely affected plaintiff's ability to engage in activities or speech protected by the First Amendment, such as his right to pursue court sanctioned redress for violations of his civil rights, as well his right to contest other criminal charges that were then pending against plaintiff criminal court.

70.     Plaintiff's instant arrest adversely affected his ability achieve a favorable outcome regarding his lawsuit against the City of New York and defendant Valentin that was then pending in Bronx County Supreme Court, because the instant arrest diminished Mr. Peralta's credibility and negatively impacted those defendants' valuations of his claims for damages.

71.     Plaintiff's instant arrest also adversely impacted his desire to commence with any future lawsuits involving NYPD officers for fear of further retaliation against him and those he cares for.

72.     Defendant City has engaged in a policy or custom of falsely arresting individuals present during the execution of fruitless search warrants to avoid the negative consequences and questions that would inevitably result from the absence of any arrests.

73.     Plaintiff asserts that the Defendants, including Castillo, Valentin, Gallitelli, Rivera and Green, who violated Plaintiff's civil rights, are part of a larger pattern and practice of similar misconduct, which is so widespread, pervasive and consistent throughout the NYPD and the City of New York that the commission such constitutionally violative behavior has become tantamount to an official policy or custom within the NYPD and City of New York or, at the very least, conclusive evidence that the City and the NYPD have either tacitly approved of such

egregious wrongdoings or that they have become deliberately indifferent to the civil rights of those who may come into contact their police officers.

74.     The individually named Defendants herein, as well as other officers serving in the employ of the NYPD and City of New York, have blatantly, shamelessly, consistently and repeatedly engaged in conduct violative of the civil rights guaranteed and protected by Constitution of the United States, in addition to the laws and Constitution of the State of New York, all without incurring any ramifications for such misconduct and, ostensibly, with the full and complete blessing of the NYPD, the City of New York and their respective policymakers and supervisors.

75.     *The New York Times*, as well as numerous other reputable journalistic enterprises, have reported on the widespread corruption within the NYPD and City of New York, particularly the incredibly disconcerting proclivity of many NYPD officers to lie about subject matters that are materially relevant to criminal prosecutions, including the complete fabrication of arrest evidence and witnesses. Attached hereto, as Exhibit A, and incorporated by reference herein, are various articles and reports detailing the magnitude and overwhelming prevalence of incidents, in which NYPD officers were caught lying, including instances that resulted in the arrest and imprisonment of innocent people. Also detailed, is the NYPD's obstinate refusal to effectuate corrective or preventive measures to combat the inevitable recurrence of such misdeeds, and perhaps most troubling, the NYPD's alarming tendency to, instead, reward and promote these officers, including those who were inculpated, via some incontrovertible form of evidence.

76.     On March 18, 2018, *The New York Times* published an explosive article, entitled "Promotions, Not Punishments for Officers Accused of Lying," written by Joseph Goldstein. Mr. Goldstein shines a light on the multitude of flaws within the CCRB and the NYPD, highlighting

the fact that the substantiation of a claim against an officer will invariably rely on the presence of incontrovertible proof against the officer. Due to the rarity availability of this type of evidence, an alarmingly small percentage of officer misconduct claims are substantiated. The CCRB is further handicapped by a terribly designed system that requires evidence of a virtually indisputable nature to substantiate any claim against an officer. The article also details the NYPD's persistent reluctance to investigate or discipline officers who lie and even posits that this reluctance is a significant cause of the lying pandemic within the NYPD. The article references various officers and detectives who were the subject of credible accusations relating to the officers' intentionally false statements, with some allegations coming from federal and state judges.

77.     On September 12, 2019, *The New York Times* published another article by Joseph Goldstein, entitled "Officers Said They Smelled Pot. The Judge Called Them Liars." Unsurprisingly, this article dealt with the unusually high frequency of officers using the odor of marijuana to excuse a search that conspicuously Doe not result in the recovery of any marijuana. It should not require an article in *The New York Times* to call attention to such patently disingenuous tactics, but has become necessary for a variety of reasons, including the NYPD's failure to correct such behavior, the willingness of prosecutors and judges to credit the lying officers and the increasing rate of occurrence.

78.     On April 24, 2019, *The New York Times* published an article, entitled "Detective's Lies Sent Three People to Prison, Prosecutors Charge," by Sean Piccolo, detailing the lies of NYPD Second Grade Detective Joseph Franco and how those lies resulted in the imprisonment of at least three innocent people. The article described how Det. Franco lied about observing drug transactions on at least three separate occasions, lies that were only uncovered through

contradictory video evidence. Det. Franco's lies resulted in the innocent individuals each being sentenced to prison terms in excess of one-year.

79.     Other articles include: (i) "Testifying' by Police: A Stubborn Problem.," by Joseph Goldstein, *The New York Times*, March 18, 2018; (ii) "New York Detective Charged with Faking Lineup Results," by Joseph Goldstein, *The New York Times*, February 17, 2018; (iii) "He Excelled as a Detective, Until Prosecutors Stopped Believing Him," by Joseph Goldstein, *The New York Times*, October 17, 2017; (iv) "Review Board Notes Rise in New York Police Officers' False Statement," by J. David Goodman, *The New York Times*, May 14, 2015; (v) "In Brooklyn Gun Cases, Suspicion Turns to the Police," by Stephanie Clifford, *The New York Times*, December 11, 2014; (vi) "Detective is Found Guilty of Planting Drugs," by Tim Stelloh, *The New York Times*, November 1, 2011; and (vii) "The Drugs? They Came From the Police," by Jim Dwyer, *The New York Times*, October 13, 2011.

80.     The NYPD has a longstanding and ignominious record of failing to discipline its officers, or even entertaining allegations of wrongdoing against them, especially those involving unlawful discrimination or bias. On June 26, 2019, *The New York Times* published an article, entitled "2,495 Reports of Police Bias. Not One Was Deemed Valid by the N.Y.P.D." This article reported that within the last five (5) years, almost 2,500 separate individuals have filed formal complaints with the NYPD alleging that an officer acted with bias toward them, with not a single one being substantiated by the NYPD. Such a finding is plainly incredible and obviously the result of deliberately poor or nonexistent investigatory protocols. The report further impugned the NYPD's commitment to combat the prejudices and the biases exhibited by many of its officers.

81.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers, officials or supervisors have imposed, tacitly approved or acquiesced to policies, customs, or patterns and practices within the NYPD that resulted in Plaintiff's arrest without probable cause.

82.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers or supervisors have failed to provide adequate training regarding the identification of probable cause, reasonable suspicion or the appropriate amount of force to be used.

83.     Defendants' actions, pursuant to Plaintiff's underlying arrest, which occurred without even the semblance of probable cause, were so blatantly violative of Plaintiff's civil rights that the tacit approval of identical or similar acts by the policymakers or supervisors of the NYPD and the City of New York, as well as their deliberate indifference towards the rights of any individuals who may come into contact with Defendants, should be inferred, because such flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or deliberate indifference regarding the commission of such violations by the policymakers or supervisors of the NYPD and City of New York.

84.     Upon information and belief, further details and facts, relating to the unlawful policies, customs or patterns and practices of the NYPD, City of New York and their respective policymakers, supervisors, police officers or employees, will become known after the completion of discovery, as such information is presently within the exclusive possession of the individual Defendants, the NYPD and City of New York.

85.     Upon information and belief, the personnel files, records and disciplinary histories of the officer Defendants will reveal a history of Constitutional violations indicative of defendant City's knowledge that the individual officer Defendants were unfit for employment as NYPD

officers, or for employment in general, and that the probability of the individually named Defendants committing similar violations in the future was extremely high.

86.     Upon information and belief, said personnel files, records and disciplinary histories will conclusively show that the City and the NYPD were fully aware of Defendants' past constitutional violations, the unacceptably high probability for the recurrence of similar transgressions, the unreasonably dangerous situations that were likely to result from their hiring or retention, as well as their unsuitability for employment as law enforcement officers, or for employment in general, and that the NYPD and City of New York failed to engage in any preventive or corrective action intended to diminish the likelihood of recurrence for such violations, which is tantamount to the City's tacit approval of such misconduct or the City's deliberate indifference towards the civil rights of those who may interact with its employees, including Castillo, Valentin, Gallitelli, Rivera and Green.

87.     Upon information and belief, the NYPD and City of New York and have failed, or outright refused, to correct the individually named Defendants' predilections to engage in unconstitutional behavior or attempt to prevent the recurrence of such misconduct

88.     The aforementioned acts of Defendants, including the City, Castillo, Valentin, Gallitelli, Rivera and Green, directly or proximately resulted in the deprivation or violation of Plaintiff's civil rights, as guaranteed and protected by the First, Fourth, Sixth and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of New York.

89.     As direct or proximate results of said acts, Plaintiff was caused to suffer the loss of his liberty, irreparable reputational harm, loss of earnings and potential earnings, physical injury, as well as severe and permanent emotional distress, including fear, embarrassment, humiliation, traumatization, frustration, extreme inconvenience, and anxiety.

## FIRST CAUSE OF ACTION
First Amendment Retaliation Claim Under
New York State Law

90.     Plaintiff re-alleges and re-avers Paragraph 1 through 89 of this Complaint, as if fully set

forth herein.

91.     Plaintiff engaged in speech and activities that were protected by Article I, Section 8, of

the New York State Constitution.

92.     Defendants committed impermissible or unlawful actions against plaintiff that were

motivated or substantially caused by plaintiff's constitutionally protected speech or activities.

93.     Defendants' retaliatory actions against plaintiff resulted in the deprivation of his liberty

and the initiation of criminal charges against him.

94.     Defendants' retaliatory actions adversely affected plaintiff's protected speech or activities

by physically or procedurally preventing him from further pursuing said protected speech or

activities or by chilling his desire to further participate or engage in such protected speech or

activities.

95.     Accordingly, plaintiff's right to engage in protected speech and activities, guaranteed and

protected by Article I, Section 8, of the New York State Constitution, was violated by

defendants.

96.     Defendant City, as employer of the individual Defendants, is responsible for their

wrongdoings, under the doctrine of *respondeat superior*.

97.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages

hereinbefore alleged.

## SECOND CAUSE OF ACTION
First Amendment Retaliation Claim Under
42 U.S.C. § 1983 Against Individual Defendants

98.     Plaintiff re-alleges and re-avers Paragraph 1 through 97 of this Complaint, as if fully set forth herein.

99.     Plaintiff engaged in speech and activities that were protected by the First Amendment to the United States Constitution.

100.    Defendants committed impermissible or unlawful actions against plaintiff that were motivated or substantially caused by plaintiff's constitutionally protected speech or activities.

101.    Defendants' retaliatory actions against plaintiff resulted in the deprivation of his liberty and the initiation of criminal charges against him.

102.    Defendants' retaliatory actions adversely affected plaintiff's protected speech or activities by physically or procedurally preventing him from further pursuing said protected speech or activities, or by chilling his desire to further participate or engage in such protected speech or activities.

103.    Accordingly, plaintiff's right to engage in protected speech and activities, as guaranteed and protected by the First Amendment to the United States Constitution, was violated by defendants.

104.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
Unlawful Search and Seizure Under
New York State Law

105.    Plaintiff re-alleges and re-avers Paragraph 1 through 104 of this Complaint, as if fully set forth herein.

106.    Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

107.    Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

108.    Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

109.    The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

110.    Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to Article I, Section 12, of the New York State Constitution, and Article I, Section 8, of the New York State Civil Rights Law.

111.    Defendant City of New York, as employer of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

112.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
Unlawful Search and Seizure Under
42 U.S.C. § 1983 Against Individual Defendants

113.    Plaintiff re-alleges and re-avers Paragraph 1 through 112 of this Complaint, as if fully set forth herein.

114.    Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

115.    Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

116.    Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

117.    The unreasonable searches and seizures to plaintiff's person and property were not

otherwise privileged.

118.    Accordingly, defendants violated plaintiff's right to be free from unreasonable searches

and seizures, pursuant to the Fourth Amendment to the United States Constitution.

119.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

## FIFTH CAUSE OF ACTION
False Arrest and False Imprisonment Under
New York State Law

120.    Plaintiff re-alleges and re-avers Paragraph 1 through 119 of this Complaint, as if fully set

forth herein.

121.    Defendants subjected Plaintiff to false arrest, false imprisonment, and deprivation of

liberty without a valid warrant or probable cause.

122.    Plaintiff was conscious of his confinement.

123.    Plaintiff did not consent to his confinement.

124.    Plaintiff's arrest and false imprisonment was not otherwise privileged.

125.    Defendant City of New York, as employer of the individual Defendants, is responsible

for their wrongdoings under the doctrine of *respondeat superior*.

126.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

## SIXTH CAUSE OF ACTION
False Arrest and False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

127.    Plaintiff re-alleges and re-avers Paragraph 1 through 126 of this Complaint, as if fully set

forth herein.

128.    The Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution by wrongfully and illegally arresting, detaining and imprisoning Plaintiff.

129.    The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

130.    At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

131.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CAUSE OF ACTION
### Assault and Battery Under
### New York State Law

132.    Plaintiff re-alleges and re-avers Paragraph 1 through 131 of this Complaint, as if fully set forth herein.

133.    At all relevant times, Defendants caused Plaintiff to fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

134.    Defendants engaged in and subjected Plaintiff to immediate harmful and/or offensive touching and battered him without his consent or justification.

135.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages.

136.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

137.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
Excessive Force Under
42 U.S.C. § 1983 Against Individual Defendants

138.   Plaintiff re-alleges and re-avers Paragraph 1 through 137 of this Complaint, as if fully set forth herein.

139.   The Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments, because they used unreasonable force without Plaintiff's consent.

140.   Defendants engaged in and subjected Plaintiff to immediate harmful and/or offensive touching and battered him without his consent.

141.   As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## NINTH CAUSE OF ACTION
Malicious Abuse of Process Under
New York State Law

142.   Plaintiff re-alleges and re-avers Paragraph 1 through 141 of this Complaint, as if fully set forth herein.

143.   Defendants arrested, detained and caused a criminal prosecution to be initiated against Plaintiff to compel the compliance or forbearance of some act.

144.   Defendants had no excuse or justification to forcibly detain or initiate a prosecution against Plaintiff, especially with the absence of any cognizable probable cause.

145.   Defendants intended to inflict substantial harm upon Plaintiff.

146.   Defendants acted to achieve a collateral purpose, beyond or in addition to Plaintiff's criminal prosecution.

147.   Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

148.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the

damages hereinbefore alleged.

### TENTH CAUSE OF ACTION
Malicious Abuse of Process Under
42 U.S.C. § 1983 Against Individual Defendants

149.    Plaintiff re-alleges and re-avers Paragraph 1 through 148 of this Complaint, as if fully set

forth herein.

150.    Defendants arrested, detained and caused a criminal prosecution to be initiated against

Plaintiff to compel the compliance or forbearance of some act.

151.    Defendants had no excuse or justification to forcibly detain and initiate a prosecution

against Plaintiff, especially with the absence of any cognizable probable cause.

152.    Defendants intended to inflict substantial harm upon Plaintiff.

153.    Defendants acted to achieve a collateral purpose, beyond or in addition to Plaintiff's

criminal prosecution.

154.    Defendants' actions deprived Plaintiff of his rights, pursuant to the Fourth, Sixth and

Fourteenth Amendments to the Constitution of the United States.

155.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

### ELEVENTH CAUSE OF ACTION
Denial of Right to Fair Trial Under
New York State Law

156.    Plaintiff re-alleges and re-avers Paragraph 1 through 155 of this Complaint, as if fully set

forth herein.

157.    Defendants fabricated false evidence to be used against Plaintiff that was likely to

influence a jury's decision.

158.    Defendants forwarded said false information to the District Attorney's Office.

159.    Defendants' actions caused undue post-arraignment restrictions to be imposed on his liberty and freedom of movement.

160.    Accordingly, Defendants violated Plaintiff's right to a fair trial, pursuant to Article I, Sections 1, 2 and 6 of the New York State Constitution, as well Article II, Section 12, of the New York State Civil Rights Law.

161.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

162.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**TWELFTH CAUSE OF ACTION**
Denial of Right to Fair Trial Under
42 U.S.C. § 1983 Against Individual Defendants

163.    Plaintiff re-alleges and re-avers Paragraph 1 through 162 of this Complaint, as if fully set forth herein.

164.    Defendants fabricated false evidence to be used against Plaintiff that was likely to influence a jury's decision.

165.    Defendants forwarded said false information to the District Attorney's Office.

166.    Defendants' actions caused post-arraignment restrictions to be imposed on his liberty and freedom of movement.

167.    Accordingly, Defendants violated Plaintiff's right to a fair trial, pursuant to the Sixth and Fourteenth Amendments to United States Constitution

168.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRTEENTH CAUSE OF ACTION
Deprivation of Rights and Denial of Equal Protection of the Laws under
New York State law

169.    Plaintiff re-alleges and re-avers Paragraph 1 through 168 of this Complaint, as if fully set forth herein.

170.    Plaintiff, as a male of Hispanic descent, is a member of a racial minority and protected class.

171.    Defendants discriminated against Plaintiff on the basis of his race, national origin, ethnicity, religion or sex.

172.    Defendants also engaged in the selective of Plaintiff, in comparison to others similarly situated.

173.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as race, religion, intent to inhibit or punish Plaintiff's exertion of his Constitutional rights, or a malicious or bad faith intent to injure Plaintiff.

174.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

175.    Defendants, motivated by discriminatory animus, applied facially neutral statutes with adverse effects against Plaintiff.

176.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

177.    As a result, defendants deprived of Plaintiff of his rights, pursuant to Article I, Section 11, of the New York State constitution.

178.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

179.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTEENTH CAUSE OF ACTION

Deprivation of Rights and Denial of Equal Protection of the Laws under
42 U.S.C. §§ 1981 and 1983 Against Individual Defendants

180.    Plaintiff re-alleges and re-avers Paragraph 1 through 179 of this Complaint, as if fully set forth herein.

181.    Plaintiff, as a male of Hispanic descent, is a member of a racial minority and protected class.

182.    Defendants discriminated against Plaintiff on the basis of his race, national origin, ethnicity, religion or sex.

183.    Defendants also selectively treated Plaintiff in comparison to others similarly situated.

184.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as race, sex, an intent to inhibit or punish Plaintiff's exertion of his Constitutional rights, or malicious or bad faith intent to injure Plaintiff.

185.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

186.    Defendants, motivated by a discriminatory animus, applied facially neutral penal statutes with adverse effects against Plaintiff.

187.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

188.    Accordingly, defendants violated Plaintiff's rights, pursuant to the Fourteenth Amendment to the United States Constitution.

189.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTEENTH CAUSE OF ACTION

Conspiracy to Interfere with Civil Rights and Failure to Prevent the Conspiracy under
42 U.S.C. §§ 1983, 1985 and 1986 Against Individual Defendants

190.    Plaintiff re-alleges and re-avers Paragraph 1 through 189 of this Complaint, as if fully set forth herein.

191.    Defendants engaged in a conspiracy against Plaintiff to deprive Plaintiff of the equal protection of the laws, or of the privileges and immunities under the laws.

192.    Defendants committed overt acts in furtherance of their conspiracy against Plaintiff.

193.    Plaintiff sustained injuries to his person or was deprived of rights or privileges of citizens of the United States.

194.    Defendants' conspiracy was motivated by some racial, or otherwise class-based, invidious discriminatory animus.

195.    The Defendants that did not engage or participate in the conspiracy to interfere with Plaintiff's civil rights, had knowledge that acts in furtherance of the conspiracy were about to be committed or being committed, possessed the power to prevent or aid, and neglected to do so.

196.    Accordingly, defendants violated Plaintiff's rights, pursuant to the First, Fourth, Sixth and Fourteenth Amendments to the United States Constitution.

197.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTEENTH CAUSE OF ACTION
### Failure to Intervene Under
### New York State Law

198.    Plaintiff re-alleges and re-avers Paragraph 1 through 197 of this Complaint, as if fully set forth herein.

199.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

200.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

201.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTEENTH CAUSE OF ACTION
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

202.    Plaintiff re-alleges and re-avers Paragraph 1 through 201 of this Complaint, as if fully set forth herein.

203.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

204.    Accordingly, the Defendants who failed to intervene violated the First, Fourth, Sixth and Fourteenth Amendments.

205.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTEENTH CAUSE OF ACTION
Negligent Hiring, Retention and Supervision Under
New York State Law

206.    Plaintiff re-alleges and re-avers Paragraph 1 through 205 of this Complaint, as if fully set forth herein.

207.    Defendant City owed a duty of care to Plaintiff to adequately hire, retain and supervise its employee defendants.

208.    Defendant City breached that duty of care.

209.    Defendant City placed defendants in a position where they could inflict foreseeable harm.

210.    Defendant City knew or should have known of its employee defendants' propensity for violating the individual rights granted under the United States Constitution and the laws of the State of New York, prior to the injuries incurred by Plaintiff.

211.    Defendant City failed to take reasonable measures in hiring, retaining and supervising its employee defendants that would have prevented the aforesaid injuries to Plaintiff.

212.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## NINETEENTH CAUSE OF ACTION
Municipal "*Monell*" Liability Under
42 U.S.C. § 1983 Against Defendant City

213.    Plaintiff re-alleges and re-avers Paragraph 1 through 212 of this Complaint, as if fully set forth herein.

214.    Defendant City maintained a policy, custom or practice that caused Plaintiff to be deprived of his Constitutional rights to be free from illegal searches and seizures.

215.    Defendant City's illegal practice is so consistent and widespread that it constitutes a custom or usage of which a supervising policy maker must have been aware of.

216.    Defendant City and its policymakers failed to provide adequate training or supervision to subordinates to such an extent that it is tantamount to their deliberate indifference towards the rights of those who come into contact with Defendant City's employees.

217.    Defendant City's employees engaged in such egregious and flagrant violations of Plaintiff's Constitutional rights that the need for enhanced supervision and training is obvious and therefore tantamount to a display of deliberate indifference by Defendant City and its policymakers towards the rights of individuals who come into contact with defendant City's employees.

218.    Defendant City's conduct violated Plaintiff's rights under the First, Fourth, Sixth and Fourteenth Amendments to the United States Constitution.

219.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.


**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a)    In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b)    Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c)    Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d)    Awarding Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

**e)**    Granting such other and further relief as this Court deems just and proper.


## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 27, 2020

Respectfully submitted,

/s/ Samuel C. DePaola
Samuel C. DePaola, Esq.
Bar Number: SD0622
Sim & DePaola, LLP
*Attorneys for Mr. Peralta*
4240 Bell Blvd, Ste 201
Bayside, New York 11361
Tel:  (718) 281-0400
Fax: (718) 631-2700
sdepaola@simdepaola.com